IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JODIE and ANDY DRANGE, each individually and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY and DOES 1-100,<br><br>Defendants. | CV 20-30-BLG-SPW<br><br>ORDER RE MOTIONS FOR/AGAINST CLASS CERTIFICATION |

Before the Court is Defendant Mountain West Farm Bureau Mutual Insurance Company's ("Defendant or Mountain West") Motion to Deny Certification of the Class Pursuant to Rule 23. (Doc. 77). Plaintiffs Jodie and Andy Drange ("Plaintiffs or the Dranges") then filed a cross-motion for Class Certification and opposed Mountain West's motion. (Doc. 81). Both motions are deemed ripe and ready for adjudication. For the following reasons, the Court grants Mountain West's motion and denies Plaintiffs' motion.

I.     **RELEVANT BACKGROUND**

The facts of this case are well known to the Court and were extensively reviewed in the Court's previous order denying both parties' motions for summary

1

judgment. (Doc. 73 at 2-5). The Court fully incorporates those facts relevant to its determination of the present motions but, for judicial convenience, shall not repeat those facts here.

Plaintiffs seek to certify the following two classes:

ACV Class – All Mountain West Farm Bureau Mutual Insurance Company policyholders in Montana who (1) made a claim for structural damage to their real property from December 18, 2011 to the present and; (2) where Mountain West Farm Bureau Mutual Insurance made an ACV payment to policyholders but did not pay GCOP. This class also includes a subclass with Unfair Trade Practices Act claims that begins with claims made on or after December 18, 2017.

RCV Class – All Mountain West Farm Bureau Mutual Insurance Company policyholders in Montana who (1) made a claim for structural damage to their real property from December 18, 2011 to the present; (2) where Mountain West Farm Bureau Mutual Insurance accepted coverage; (3) where the policyholder completed repairs; and (4) Mountain West refused to pay GCOP with the policyholders' RCV payment. This class also includes a subclass with Unfair Trade Practices Act claims that begins with claims made on or after December 18, 2017.

(Doc. 82 at 8-9).[1]

## II. LEGAL STANDARD

A plaintiff seeking class certification has the burden of demonstrating that the proposed classes satisfy the requirements of Fed. R. Civ. P. 23(a) and (b). For Rule 23(a), the plaintiff must establish "'there are questions of law or fact common to the class,' as well as demonstrate numerosity, typicality and adequacy of

---

[1] For reference, the Court shall use the following abbreviations: ACV (Actual Cash Value) Payment, RCV (Replacement Cost Value) Payment, and GCOP (General Contractor Overhead and Profit) Payment.

representation." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 2022 WL 1053459, at *4 (9th Cir. 2022) (quoting Rule 23(a)). For Rule 23(b)(3)[2], "the district court must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* at *5 (quoting Rule 23(b)(3)). The moving party must satisfy each requirement by a preponderance of the evidence. *Id.*

However, prior to addressing the Rule 23 analysis, the moving party must overcome the hurdle of defining the proposed classes with enough specificity to provide the best notice practicable. "[C]ourts generally accept that the definition must be 'precise, objective, and presently ascertainable' before the class action can proceed." *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 121 (N.D. Cal. Aug. 11, 2014) (internal citation omitted).

## III. DISCUSSION

### A. Ascertainability

The moving party must define the class in such a manner "as to render it 'administratively feasible to determine if a given individual is a member of the class.'" *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 563 (N.D. Cal. July 21, 2016) (citation omitted). Courts have used several criteria for determining

---

[2] Parties seeking class certification must satisfy one of three categories under Rule 23(b). Plaintiffs assert the putative classes qualify under the third category.

3

ascertainability, including whether class members can be determined based on objective criteria, whether the proposed class includes any members who will be able to recover, and whether the plaintiff can demonstrate that they will be able to locate any absent class members. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. Sept. 18, 2014).

Mountain West argues Plaintiffs' proposed class definitions are imprecise because: (1) the classes include uninjured parties, (2) the classes do not include any evidence for a viable damages model, and (3) the UTPA claims associated with each class are completely undefined. Plaintiffs respond that the class definitions are not overbroad because GCOP is a component of ACV claims, and the definitions specifically exclude insureds who were paid GCOP. Plaintiffs further contend that the classes do not need a damages model because the damages are calculable to a sum certain and the alleged UTPA violations are straightforward to include all possible violations of the statute's subsections.

The proposed classes are defined as "[a]ll Mountain West [] policyholders in Montana . . . where Mountain West [] made an ACV payment to policyholders but did not pay GCOP" for the ACV Class, and "[a]ll Mountain West [] policyholders in Montana . . . where Mountain West [] accepted coverage . . . where the policyholder completed repairs . . . [and] Mountain West refused to pay GCOP with the policyholders' RCV payment" for the RCV Class.

Based on these definitions, the Court finds that Plaintiff's proposed class definitions are overbroad and unascertainable by necessarily including policyholders with no concrete injury. In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court reviewed its own Article III standing precedent to determine whether several thousand members of a putative class had standing to sue for an alleged violation of the Fair Credit Reporting Act. *Id.* at 2207. The Supreme Court emphasized plaintiff's burden to demonstrate standing. *Id.* Specifically, the Supreme Court held that "[e]very class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *Id.* at 2208 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 446 (2016) (Roberts, C.J., concurring)). The Supreme Court went on to determine that 6,332 of the 8,185 proposed class members did not have standing to sue because they had not suffered a concrete injury as required by Article III. *Id.* at 2209. The Supreme Court reversed the determination of the Ninth Circuit regarding those 6,332 potential class members and remanded for further proceedings regarding the 1,853 members who could demonstrate a concrete harm. *Id.* at 2214.

Plaintiffs state "[v]irtually every court to consider this question 'has determined that an actual cash value payment includes a general contractor's overhead and profit charges in circumstances where the policyholder would be

*reasonably likely* to need a general contractor in repairing or replacing the damaged property at issue.'" (Doc. 82 at 12) (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1306 (11th Cir. 2008) (emphasis added). Thus, to be entitled to GCOP, there has to be at least a reasonably likely chance that a general contractor will be needed for the repairs—a standard that necessarily excludes those insureds whose repairs do not warrant the services of a general contractor. Indeed, Plaintiffs acknowledge this standard throughout their brief. (Doc. 82 at 19) ("But the law is clear on this point, and Mountain West itself concedes that insureds are owed GCOP as part of their loss settlement—*at least sometimes*. Mountain West also concedes that GCOP is owed at the ACV stage—again, *at least sometimes*." (emphasis added)). Yet, by including all Mountain West insureds in their class definitions, Plaintiffs deliberately attempt to include individuals whose repairs did not warrant the general contractor services (even on a reasonably likely basis), did not incur GCOP charges as part of their repair costs, and, therefore, did not suffer any damages when Mountain West did not include GCOP payments in either the insured's ACV or RCV payment. A class so defined is untenable and overbroad because it includes individuals who lack Article III standing. Therefore, the Court finds that Plaintiffs' proposed class definitions are neither precise nor ascertainable.[3]

---

[3] Having determined that Plaintiffs' class definitions are unascertainable, the Court need not go further to address Mountain West's arguments regarding Plaintiffs' damages model or UTPA claims.

While there is some question of whether ascertainability as a requirement is found in Rule 23, *See Ruiz Torres v. Mercer Canyons, Inc.*, 305 F.R.D. 646, 651 (E.D. Wash. April 8, 2015) and *Kosta v. Del Monte Foods, Inc*, 308 F.R.D. 217, 223 (N.D. Cal. July 30, 2015), many courts have found it to be a prerequisite to class certification. *See Carrera v. Bayer Corp.*, 727 F.3d 300 (3rd Cir. 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. 2014). Given the recent Supreme Court holding in *TransUnion* and the current posture of this litigation, the Court finds the rationale of those courts considering ascertainability as a prerequisite to class certification to be the better practice.

Further, because the proposed class definitions are overbroad and will necessarily include members without standing, the proposed classes also cannot overcome the requirements of Rule 23(b).

### B. Rule 23(b) Analysis

A court may certify a class under Rule 23(b)(3) only if it determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

#### *1. Predominance*

"In order for the [moving party] to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the [party's] claim." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 2022 WL 1053459, at *6 (9th Cir. 2022). Determining whether the questions of law or fact common to the entire class predominate over individual questions must begin with the elements of the underlying cause of action. *Id.* "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted).

Here, Plaintiffs assert two claims for class-wide resolution: (1) "At the ACV stage, does Mountain West breach the insurance contract and violate Montana's Unfair Trade Practices Act (UTPA) by applying a policy of categorically refusing to include general contractor overhead and profit [] on storm claims regardless of the scope of necessary repairs" and (2) "At the RCV stage, does Mountain West breach the contract and violate the UTPA by refusing to pay GCOP where an insured incurs GCOP but cannot provide the general contractor's proprietary business records." (Doc. 82 at 6). Plaintiffs argue these questions predominate over individual inquiries because "they are simply questions of law, and turn on whether Mountain West's policy of imposing extra-contractual documentation as a prerequisite to its

8

consideration of payment of GCOP, both at the ACV and RCV stage, is a breach of contract and a violation of the UTPA." (*Id.* at 25). For support, Plaintiffs point to the Montana Supreme Court's decision upholding class certification in *Kramer v. Fergus Farm Mut. Ins. Co.*, 474 P.3d 310 (Mont. 2020).

In *Kramer*, an insurer—Fergus Farm Mutual—utilized an internal practice when reviewing property damage claims to pay GCOP when an adjuster determined it was reasonably necessary to employ a general contractor to complete the insured's repairs. 474 P.3d at 313. The practice was not stated in Fergus Farm Mutual's insurance policy. *Id.* The parties also disputed whether Fergus Farm Mutual employed a "three-trade rule" when determining whether a general contractor was reasonably necessary meaning when an insured's damages required three or more trades to repair, a general contractor would be considered reasonably necessary. *Id.* The Kramers filed a claim for property damage following a hailstorm. Fergus Farm Mutual accepted coverage and, although the insurer disputed whether the services of a general contractor were reasonably necessary given the extent of the damage, the insurer agreed to pay GCOP in the RCV payment on the condition that the Kramers submit subcontractor invoices and photos of the completed repairs. *Id.* The Kramers failed to provide the requested documentation and Fergus Farm Mutual refused to pay the GCOP charges. *Id.*

The Kramers sued and sought certification for two classes:

> All Fergus Farm Mutual policy holders a) who made an actual cash value claim for residential and associated structural loss under a farm owner or homeowner policy; b) from March 28, 2009 to the present; c) where Fergus Farm Mutual accepted liability, and its own records show that at least three subcontractors would be required to complete the repairs; but d) where the actual cash value payment did not include an additional 20% payment for general contractor overhead and profit, unless the insured was paid that full amount as part of the replacement cost value payment. (The ACV Class).
>
> All members of the ACV Class a) who have replacement cost value policies; b) received an initial actual cash value payment; c) went on to complete the identified repairs and were paid the previously held back replacement cost value payment; but d) who were not paid an additional 20% for general contractor overhead and profit as part of their replacement cost value payment. (The RCV Class).

*Id.* at 313-14. The district court granted the Kramers' motion for class certification and Fergus Farm Mutual appealed. *Id.*

Fergus Farm Mutual argued to the Montana Supreme Court that class certification was improper because the Kramers could not meet Rule 23(b)'s predominance requirement. Specifically, Fergus Farm Mutual asserted the only question common to all class members was whether it was reasonably necessary to include the services of a general contractor in repair payment. The insurer argued such a question could only be answered on a case-by-case basis as the extent of each insured's damages would vary from claim to claim. *Id.* at 315. However, the Montana Supreme Court found this argument unpersuasive because it failed to follow the express language of Fergus Farm Mutual's insurance policy and focused instead on the insurer's internal practice—a practice not stated in the policy. The

10

Montana Supreme Court found that "a threshold question here is whether [Fergus Farm Mutual's] internal practices are themselves consonant with the policy issued to its insureds, or whether they constituted a breach of the policy." *Id.* Thus, because the insurance policy was common to all putative class members and was silent on the matter of how the insurer would determine the necessity of GCOP payments at the ACV or RCV stage, the Montana Supreme Court affirmed the district court's determination that a common question predominated for class certification purposes. *Id.* at 316.

Plaintiffs argue the same logic applies here, as the proffered common questions center on whether Mountain West's internal practices are adequately reflected and supported by the language of the insurance policy.

Mountain West responds that *Kramer* is not applicable here because, unlike Fergus Farm Mutual, Mountain West relies on its insurance policy's "going rate" standard and requirement that insureds document their loss when determining whether GCOP is reasonably necessary. Thus, Mountain West argues that the resolution of Plaintiffs' common questions would require an individual evaluation—at least in part—to determine whether each insured complied with their contractual duties.

Regarding Plaintiffs' second common question—whether Mountain West breaches the contract by refusing to pay GCOP where an insured incurs GCOP

charges but does not provide the requested documents supporting those charges such as subcontractor invoices. The Court agrees with Mountain West and has already determined the practice to be adequately supported by the insurance contract's unambiguous language. In the Court's previous order denying both parties' motions for summary judgment, the Court found that Mountain West's insurance contract imposed a duty on insureds to "[p]repare an inventory of all damaged, destroyed, lost, or stolen or other property from which claim is made, including, but not limited to, the following information . . . [b]ills, receipts and related documents that support the claimed loss and the figures in the inventory." (Doc. 73 at 8) (quoting Doc. 15-1 at 30). The insurance contract also states that Mountain West may request insureds to provide these documents when the insurer reasonably requires the information, and that Mountain West will pay the full cost of the repairs necessarily and actually spent. (*Id.* at 8-9). Thus, Plaintiffs' assertion that Mountain West imposes an extra-contractual obligation on insureds to obtain and produce "proprietary" business records such as subcontractor invoices is unsupported. The insurance contract expressly and unambiguously allows Mountain West to do just that. Whether insureds adequately complied with this obligation is a factual question requiring a case-by-case analysis—an exercise that fails Rule 23(b)'s predominance test.

Regarding Plaintiffs' first common question—whether Mountain West breaches the insurance contract and Montana's UTPA by categorically refusing to

include GCOP on storm claims—the Court similarly finds that the contention does not predominate over individual inquiries. As Plaintiffs point out, "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" (Doc. 82 at 24 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). In *Kramer*, the Montana Supreme Court determined that the common question of whether Fergus Farm Mutual's internal practice and alleged use of the three-trade rule constituted a breach of contract would apply to all putative class members. 474 P.3d at 315. That question applied to all putative class members because the class definitions were narrowed to only include instances "where Fergus Farm Mutual accepted liability, and its own records show that at least three subcontractors would be required to complete the repair . . . ." *Id.* at 313-14. Thus, evidence that Fergus Farm Mutual did employ the three-trade rule for determining GCOP was reasonably necessary would suffice for each class member to make a prima facie showing that they were owed GCOP on their damage claims.

Here, as discussed previously, Plaintiffs' proposed classes are not so narrowly tailored. Plaintiffs assert that it is Mountain West's practice to categorically refuse GCOP payments on storm damage claims. However, their proposed class definitions

13

sweep in not only those insureds with storm damage, but those insureds who made any kind of claim for structural damage to their real property from 2011 to present. (Doc. 82 at 8-9). Even if Plaintiffs' claim is true that Mountain West does systemically deny GCOP on storm damage claims, how would that evidence allow a putative class member who did not have a storm damage claim to make a prima face showing that Mountain West breached the insurance contract in handling their claim? How is determining whether Mountain West's internal practices regarding storm damage claims breaches its own insurance contract susceptible to class-wide proof when the class includes those who did not make a storm damage claim? By establishing such a broad definition, Plaintiffs' classes will necessarily include members who did not suffer any damages as a result of Mountain West's alleged practices either because the insured did not make a claim to repair storm damages or because the extent of the insured's damages were such that it was not reasonably necessary to require the services of a general contractor. Without conducting an individual assessment of each putative class member's claim, the Court would have no way of knowing who suffered damages and had standing to continue in the class and who did not. The need for this individual inquiry outweighs the presence of a common question and creates a predominance problem numerous other courts have found wanting for class certification. *See, e.g., Nguyen v. St. Paul Travelers Ins. Co.*, 2008 WL 4534395, at *9 (E.D. La. Oct. 6, 2008); *Allen-Wright v. Allstate Ins. Co.*,

2008 WL 5336701, at *7 (E.D. Pa. Dec. 17, 2008); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 677 (M.D. Fla. Sept. 29, 2010). This Court is similarly not persuaded and finds that Plaintiffs have not met their burden to demonstrate class-wide predominance under Rule 23(b)(3).

### 2. *Superiority*

To determine superiority, a court must consider the four factors expressed in Rule 23(b)(3): (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular form;" and (4) "the likely difficulties in managing a class action."

Plaintiffs concentrate the bulk of their argument on the third factor by arguing that a class action would be superior to individual litigation due to the relatively small damage claims each class member could assert. For example, Plaintiffs state, "[t]he Dranges' breach of contract damages are $8,861, exclusive of interest. While the size of various class members' claims may vary, it is reasonable to expect that the class members are better off pooling their resources together rather than bringing individual claims . . . ." (Doc. 82 at 27). Plaintiffs also assert a class action would be more desirable than separate litigation to conserve judicial resources and time.

Mountain West responds that a class action is not superior in this instance because "[w]hether claimants are entitled to GCOP is dependent on numerous policy-based factual determinations." (Doc. 90 at 15-16). Specifically, "[n]ot only must the court adjudicate whether each claimant met its policy obligation to document and complied with a request for appraisal; the Court must also adjudicate whether each claimant actually paid GCOP to a contractor and was not paid by Mountain West for that out-of-pocket expense." (*Id.* at 16).

"[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)). In other words, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id.* (citation omitted).

Determining whether each class member in this case has the right to recover damages would require that individual to litigate numerous issues including whether their claim involved storm damages and whether their claimed damages reasonably required the services of a general contractor. Given these complexities, the Court agrees with Mountain West that a class action is not superior to individual adjudication.

16

IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Mountain West Farm Bureau Mutual Insurance Company's Motion to Deny Class Certification (Doc. 77) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs Jodie and Andy Drange's Cross Motion for Class Certification (Doc. 81) is **DENIED**.

DATED this 1st day of September, 2022.

SUSAN P. WATTERS
United States District Judge